IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-02480-RBJ

ARMELINDA A. ARCHULETA,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

ORDER

The Court here reviews the Commissioner's denial of Armelinda A. Archuleta's application for disability benefits under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court upon the filing of plaintiff's Reply Brief on April 12, 2012. [Docket #14.] The Court apologizes to both parties for its delay in resolving this case.

**Facts**

Procedural Background

On April 8, 2008, Ms. Archuleta filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for supplemental security income. R. at 15. In both applications Ms. Archuleta alleged a disability onset date of January 1, 2004. *Id.* Ms. Archuleta's applications were initially denied on September 15, 2008. *Id.* She then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 22,

2010,[1] with Ms. Archuleta and her attorney appearing by video hearing from Pueblo, Colorado, and the ALJ presiding from Colorado Springs, Colorado. *Id.* Nora W. Dunne, a vocational expert ("VE"), also appeared at the hearing. *Id.*

On October 26, 2010, ALJ Kathryn D. Burgchardt issued a decision denying Ms. Archuleta social security benefits. R. at 53–62. Ms. Archuleta pursued an internal appeal and provided additional legal briefing. R. at 1–4. The Appeals Council denied her request to review the ALJ's decision on July 25, 2011. R. at 1, 4. The present case was filed on September 21, 2011.

Ms. Archuleta's Relevant Medical History

Ms. Archuleta was born on January 12, 1962 and was 46 years old on the last insured date in December 2008. R. at 61. Dr. Dexter D. Koons treated Ms. Archuleta over seven years for her back pain from 2003 to 2010. R. at 734–62. He had diagnosed Ms. Archuleta with degenerative disk disease of the lumbar spine in 2003. *See, e.g.*, R. at 478. Dr. Koons provided lengthy medical records from those years that document the various treatments and medications for Ms. Archuleta's back pain, as well as her response to them. *See* R. at 440–91, 596–762.

Dr. Brett Valette conducted a consultative examination on August 6, 2008. R. at 492–95. He diagnosed Ms. Archuleta with dysthymia and panic disorder. R. at 495. Dr. Angelo Dilullo conducted a physical consultative examination on August 23, 2008. R. at 518–23. He also reviewed a discharge summary record from December 11, 2007. R. at 518. Dr. Dilullo diagnosed Ms. Archuleta with possible fibromyalgia, possible degenerative joint disease of the L-spine, and depression. R. at 521. He, however, concluded that Ms. Archuleta would be expected to stand or walk and sit without restriction; could lift and carry 25 pounds frequently

---

[1] An initial hearing was held on April 8, 2010, but was postponed so that Ms. Archuleta could obtain counsel. R. at 7–16.

and 50 pounds occasionally; and had no postural, manipulative, or other workplace environmental limitations. R. at 521–22.

Dr. James J. Wanstrath performed a review of Ms. Archuleta's records in August 2008 but did not conduct an examination. R. at 500–13. He opined in a Psychiatric Review Technique Form ("PRTF") that Ms. Archuleta had mild restrictions in daily living activities, moderate limitations in social functioning and in her ability to maintain concentration, persistence or pace, but that she had no episodes of decompensation. R. at 510. Dr. Wanstrath completed a mental residual functional capacity ("RFC") assessment, opining that Ms. Archuleta "[c]an follow simple instructions, sustain ordinary routines, make simple work-related decisions; can respond appropriately to supervision, coworkers and work situations, can deal with changes in a routine work setting." R. at 516.

Dr. Jose G. Vega examined Ms. Archuleta in July 2010 and provided a RFC evaluation. R. at 1018. Dr. Vega diagnosed Ms. Archuleta with major depression and panic disorder. R. at 1021. Dr. Vega concluded that Ms. Archuleta suffered from many moderate and marked mental health limitations, and that the severity of her impairments has existed since 2006. R. at 1022–23.

Nurse practitioner Jay Balestrier also treated Ms. Archuleta at Dr. Koon's office, for a period of ten years. R. at 1016. Mr. Balestrier completed a statement in July 2010 that opined that Ms. Archuleta could lift/carry up to two pounds for up to one third of an eight-hour day; sit four hours in an eight-hour day, and stand/walk for two and a half hours in an eight-hour day. R. at 1014. Mr. Balestrier also noted some limitations in Ms. Archuleta's postural abilities and abilities to use her upper extremities. R. at 1015. He stated that these restrictions have been at this severity level for ten years. R. at 1016.

ALJ's Decision

The ALJ followed the five-step evaluation process provided at 20 C.F.R. § 404.1520(a)(4) to determine whether Ms. Archuleta is disabled for Social Security. At step one, the ALJ found that Ms. Archuleta last met the insured status requirements of the Social Security Act on December 31, 2008. R. at 55. The ALJ also found that Ms. Archuleta had not engaged in substantial gainful activity from the alleged onset date of January 1, 2004, through her last insured date of December 31, 2008. *Id*. At step two, the ALJ found the following as Ms. Archuleta's severe impairments: "fibromyalgia; degenerative disc disease; dysthymia and panic disorder." *Id*.

At step three, the ALJ determined that the Ms. Archuleta "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. at 56.

Step four requires the ALJ to assess Ms. Archuleta's RFC in light of the medical impairments and determine if she is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ concluded:

> [T]he claimant had the residual functional capacity to perform light work . . . with the following limitations: claimant would require simple, unskilled work with one, two, or three step instructions; could lift or carry ten pounds frequently and 20 pounds occasionally; could stand and/or walk, with normal breaks, for a total of six hours in an eight hour workday; could sit, with normal breaks, for a total of six hours in an eight hour workday; could perform pushing and pulling motions with her upper and lower extremities within the aforementioned weight restrictions and should avoid unprotected heights and moving machinery.

R. at 58.

Ms. Archuleta had previously worked as a waitress, assistant manager and office manager. R. at 61. The vocational expert ("VE") testified that these occupations were all performed at a specific vocational preparation of three or higher, thus semi-skilled or skilled

occupations.  *Id.*; *see* R. at 44.  Based on the RFC assessment, the ALJ found that Ms. Archuleta is unable to perform any past relevant work.  R. at 61.

At step five, the ALJ, after considering Ms. Archuleta's age, education, work experience, and RFC, found that she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  *Id*.  In making this determination, the ALJ relied on testimony at the hearing by the VE.  R. at 61–62.  The VE testified that an individual with Ms. Archuleta's age, education, work experience, and RFC would be able to perform the requirements of jobs such as storage facility rental clerk, furniture rental clerk, and recreational aide.  R. at 62; *see* R. at 45–47.  The ALJ thus denied Ms. Archuleta's claim for disability benefits.  R. at 62.

### Standard of Review

This appeal is based upon the administrative record and the briefs submitted by the parties.  When reviewing a final decision by the Commissioner, the role of the district court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998) (citing *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992)).  A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).  More than a scintilla, but less than preponderance is required.  *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).  Although the evidence may support two inconsistent conclusions, that "does not prevent an administrative agency's finding from being supported by substantial

evidence." *Id*.  The Court cannot "reweigh the evidence or substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

## **Conclusions**

Ms. Archuleta raises three issues: (1) the ALJ failed to state the weight given to the opinions of the non-examining psychologist Dr. Wanstrath and the examining psychologist Dr. Vega; (2) the ALJ failed to properly weigh the medical source opinion of consultative examiner Dr. Angelo Dilullo; and (3) the ALJ's RFC finding is not supported by substantial evidence.  I address these arguments in turn.

### 1. ALJ's Consideration of the Opinions of Drs. Wanstrath and Vega

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)).  The opinion of a treating physician is given controlling weight "as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  *Id.* (citing 20 C.F.R. § 401.1527(d)(2)).  Even if the ALJ does not give "controlling weight" to the opinion of a treating physician, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

"After considering the pertinent factors the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (quotation marks and brackets omitted).  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Social

Security Ruling 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Furthermore, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . , as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 404.1527(f)(2)(ii).[2]

Ms. Archuleta argues that the ALJ erred by failing to identify the weight she gave to the opinions by the State agency non-examining psychologist Dr. Wanstrath and the examining psychologist Dr. Vega. In fact, the ALJ fails to mention their opinions whatsoever in her decision. *See* R. at 53–62.

The Commissioner responds that "[w]hile the ALJ did not explicitly discuss Dr. Wanstrath's opinion, it is clear that the ALJ relied on the nonexamining psychologist's opinion because the ALJ's residual functional capacity determining [sic] was consistent with the opinion in all significant respects." [#13] at 14. That speculation might be right, but it is still speculation. It is not "clear" from the decision that the ALJ relied on Dr. Wanstrath's opinion, because she does not refer to it once.

Remand is therefore appropriate where, as here, an ALJ does not make any articulations as to the weight given to a medical source opinion. 20 C.F.R. § 404.1527(f)(2)(ii). The court "cannot simply presume the ALJ applied the correct legal standards in considering [the] opinion" absent findings explaining the weight assigned to it. *Id.*; *accord Lopez v. Astrue*, 371 F. App'x 887, 891–92 (10th Cir. 2010); *Victory v. Barnhart*, 121 F. App'x 819, 826 (10th Cir. 2005).

---

[2] Current version redesignated as 20 C.F.R. §404.1527(e)(2)(ii) by 77 F.R. 10651-01, at 10656 (February 23, 2012).

Similarly, the Commissioner "concedes that the ALJ did not explicitly evaluate the opinion of Dr. Vega." [#13] at 15. Nonetheless, the Commissioner states that because Dr. Vega's examination occurred over a year and a half after Ms. Archuleta's last insured date, that "his opinion as to Plaintiff's mental work-related limitations was not pertinent to her condition during the relevant period." *Id.* The Commissioner maintains that any error would thus be harmless. *Id.*

Although the Commissioner is correct that the principle of harmless error may be applicable in a Social Security disability case, the Tenth Circuit has cautioned against application of the harmless error doctrine so as to "avoid usurping the administrative tribunal's responsibility to find the facts" and to prevent "violating the general rule against post hoc justification of administrative action." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The Commissioner also argues that this Court should apply a standard that places the burden on Ms. Archuleta to show that any error was harmful or that it has prejudiced her. [#13] at 15 (citing *Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009), and *St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002)). The Tenth Circuit, however, has more recently rejected "deviat[ing] from *Allen*'s controlling formulation of the harmless error standard to be used in social security cases." *Armijo v. Astrue*, 385 F. App'x 789, 792 n.4 (10th Cir. 2010). Therefore, the doctrine should apply only when the Court "could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145.

The harmless error doctrine is especially inapplicable in this case with respect to the ALJ's consideration of Dr. Vega's opinion. Three of Dr. Vega's limitations were used in posing an addition hypothetical question to the VE for a person having "a marked impairment in the

ability to accept instructions and respond appropriately to criticism from supervisors," a "marked impairment in the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes," and a "marked impairment in the ability to interact appropriately with the general public." R. at 47; *see* R. at 1022–23. With these restrictions, the VE testified to an opposite outcome—that these limitations would leave no jobs available. R. at 47.

Moreover, I find the Commissioner's argument regarding the timing of Dr. Vega's opinion to be unpersuasive. Nowhere in the ALJ's decision does she state this as her cause for not considering or rejecting Dr. Vega's opinion. The ALJ's decision must be "evaluated based solely on the reasons stated in the decision," not on an after the fact effort to salvage it. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). At any rate, the mere fact that an examination occurred after the insured period is not dispositive of its relevance or weight. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995). Rather, "the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status." *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348–49 (10th Cir. 1990). Because the ALJ failed to discuss Dr. Vega's opinion, it is unclear whether that opinion contains relevant information or analysis as to Ms. Archuleta's disability prior to her last insured date in December 2008.

I cannot confidently say that no reasonable administrative factfinder, following the correct analysis by considering Drs. Wanstrath and Vega opinions, could have resolved this case another way. *Allen*, 357 F.3d at 1145. Although I express no opinion as to what weight, if any, the ALJ should give to these medical opinions, the ALJ on remand must explain what weight she assigns to Drs. Wanstrath and Vega's opinions and her reasons for those conclusions.

### 2. ALJ's Consideration of Dr. Dilullo's Opinion

Ms. Archuleta argues that the ALJ erred in according great weight to Dr. Dilullo's opinion. Dr. Dilullo was a one-time consultative examiner of Ms. Archuleta who opined that she would have no standing/walking or sitting restrictions in an eight-hour day, and that she should be able to lift and carry approximately 25 pounds frequently and 50 pounds occasionally. R. at 522. The ALJ "afford[ed] great weight to the opinion of Dr. Dilullo, the physical consultative examiner, as it was consistent with claimant's treatment records." R. at 60. The ALJ also discussed Dr. Dilullo's observations and negative examination tests during the examination. R. at 59. The ALJ noted that these supported a finding of no restrictions and were contrary to Ms. Archuleta's claims of extreme pain or inability to carry and lift. R. at 59; *see* R. at 520–21.

Ms. Archuleta argues that the ALJ failed to identify an adequate reason for according great weight to Dr. Dilullo's opinion, especially when it was not consistent with findings by Dr. Koons and nurse practitioner Mr. Balestrier. I disagree. The ALJ adequately considered and addressed Dr. Dilullo's medical opinion and evaluated whether that opinion was consistent with other treatment records and with Dr. Dilullo's own observations. Although the ALJ's analysis may differ on remand, it would not be this Court's role to reweigh the conflicting evidence. *White*, 287 F.3d at 905.

### 3. ALJ's RFC Finding

Ms. Archuleta lastly challenges the RFC finding as not being supported by substantial evidence. She contends that (1) the ALJ improperly picked and chose evidence from Dr. Koon's records that supported a finding of non-disability; (2) the ALJ's RFC limitations did not match

those in Dr. Dilullo's opinion, or the exact limitations espoused in another opinion; and (3) the ALJ failed to provide a sufficient narrative discussion supporting her RFC finding.

The Court first observes that any analysis of the RFC finding "may be affected by the ALJ's treatment of this case on remand," namely, how the ALJ accords weight to the medical opinions as discussed above. *Sissom v. Colvin*, No. 12-6131, 2013 WL 765302, at *5 (10th Cir. Mar. 1, 2013) (unpublished) (declining to review whether RFC is supported by substantial evidence where remanded for error in evaluating medical opinion); *Watkins*, 350 F.3d at 1299 (same).

Nonetheless, as guidance on remand, the ALJ must ensure that she does "not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin*, 365 F.3d at 1219. It is true that "the ALJ is not required to discuss every piece of evidence," but on remand, she must also "discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)) (internal quotation marks omitted).

However, to the extent that Ms. Archuleta argues that the RFC limitations do not precisely match limitations from another medical opinion—for example, that the RFC assessment cannot be supported by nurse practitioner Balestrier because Mr. Balestrier's opinion poses more limitations—I disagree. "Although the opinion must be based on all the evidence of record, including the available medical evidence, the ALJ need not adopt any particular medical or other source opinion on that matter." *Moses v. Astrue*, No. 10-CV-02824-REB, 2012 WL 1326672, at *5 (D. Colo. April 17, 2012). "Instead, the ALJ is required simply to 'consider and address medical source opinions' and, '[i]f the RFC assessment conflicts with an opinion from a

medical source, . . . explain why the opinion was not adopted.'" *Id.* (citing Social Security Ruling 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996)).  On remand, the ALJ is not required, as Ms. Archuleta claims, to adopt any opinion or RFC assessment in totality.

Finally, I agree that on remand the ALJ should provide a narrative discussion of the evidence supporting the RFC conclusion.  *Spicer v. Barnhart*, 64 F. App'x 173, 177 (10th Cir. 2003) (citing SSR 96–8p, 1996 WL 374184, as "stating that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, must contain a thorough discussion and analysis of the objective medical and other evidence, and must include a discussion of why reported symptom-related functional limitations can or cannot reasonably be accepted as consistent with the medical evidence").

### Order

The decision of the ALJ is reversed.  The case is remanded to the Commissioner for proceedings consistent with this order.

DATED this 28th day of March, 2013.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge